UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRADLEY A.,[1]

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

20-CV-352-LJV
DECISION & ORDER

_____

On March 24, 2020, the plaintiff, Bradley A. ("Bradley"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] Docket Item 1. On February 1, 2021, Bradley moved for judgment on the pleadings, Docket Item 16; on April 2, 2021, the Commissioner responded and cross-moved for judgment

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Bradley applied for both Social Security Income ("SSI") and Disability Insurance Benefits ("DIB"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

on the pleadings, Docket Item 17; and on April 23, 2021, Bradley replied, Docket Item 19.

For the reasons stated below, this Court grants Bradley's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ('ALJ')] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

2

have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Bradley argues that he has new and material evidence warranting remand, Docket Item 16-1 at 16-18, and that the ALJ erred in four ways: (1) failing to properly consider medical listing 11.02 for epilepsy, *id.* at 18-21; (2) improperly weighing the opinion of his therapist, J. Todd Greco, LCSW, *id.* at 21-23; (3) improperly weighing the opinion of a consultative examiner, Christine Random, Ph.D., *id.* at 23-25; and (4) substituting his own lay judgment for that of a physician, *id.* at 25-27.

This Court agrees that the ALJ erred for the first of those four reasons. Because that error was to Bradley's prejudice, the Court remands the matter to the Commissioner for proper consideration of listing 11.02. The Court "will not reach the remaining issues raised by [Bradley] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015).

A claimant is *per se* disabled if his impairments meet or medically equal one of the specific requirements of a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). The burden is on the claimant to show that he meets or medically equals the criteria for a particular listing. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Likewise, for a claimant to show "that his unlisted

impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original); *see also* 20 C.F.R. § 416.926(a) ("[A] claimant's] impairment[] is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment.").

When a claimant "appears to meet at least some of the requirements of a listing, the ALJ is obligated to explain his reasons for finding that the listing is not met." *Nelson v. Colvin*, 114 F. Supp. 3d 69, 75 (W.D.N.Y. 2015). That "determination . . . must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, including any functional limitations that result from the impairment, with the corresponding criteria shown for the listed impairment." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) (citing 20 C.F.R. §§ 416.925, 416.926a; *Giles v. Chater*, 1996 WL 116188, at *5-6 (W.D.N.Y. Jan. 9, 1996)). "The ALJ must either engage in this comparison[] or expressly adopt a medical source statement that discusses the medical evidence and arrives at express conclusions concerning the [l]istings." *Easley ex rel. P.S.J. v. Colvin*, 2014 WL 5465411, at *3 (W.D.N.Y. Oct. 28, 2014).

Here, Bradley undoubtedly met at least some of the criteria for listing 11.02, labelled "Epilepsy—convulsive epilepsy":[4] he had a longstanding and significant history

---

[4] The listing reads as follows:

Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.

A. Daytime episodes (loss of consciousness and convulsive seizures) or

4

of frequent seizures despite medication. *E.g.*, Docket Item 13 at 284, 328, 400, 458. But the ALJ did not engage in the required comparison between Bradley's medical history and the 11.02 criteria, nor did the ALJ adopt a medical source statement that justified his conclusions.

In denying Bradley's application, the ALJ addressed whether Bradley's severe impairment of seizure disorder met listing 11.02 and concluded that it did not. Docket Item 13 at 21-22. The ALJ generally found that

> the record does not establish the medical signs, symptoms, laboratory findings[,] or degree of functional limitation required to meet or equal the criteria of any listed impairment[,] and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairments medically equal a listed impairment.

*Id.* at 22. But the ALJ offered no analysis of or explanation for those general conclusory statements. He made no specific findings whatsoever as to listing 11.02. In fact, he did not even mention the listing 11.02 criteria. *See id.*

Because the ALJ did not describe or discuss any medical evidence regarding Bradley's seizure disorder—such as how often seizures occurred or what happened when they did, *see id.*—he did not address the "symptoms, signs, and laboratory findings" of Bradley's seizure disorder, *see Hamedallah*, 876 F. Supp. 2d at 142. For that reason, and because he did not mention the listing 11.02 criteria, he certainly did not "compar[e]" those signs, symptoms, or findings to the criteria of listing 11.02. *See id.* And he did not "expressly adopt a medical source statement that discusse[d] the

---

> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A2, § 11.02 (2016).

5

medical evidence and arrive[d] at express conclusions concerning the [l]istings." *See Easley*, 2014 WL 5465411, at *3. That was error.

Even though the ALJ "should [have] set forth a sufficient rationale in support of his decision to find or not to find a listed impairment," remand is not required unless the Court is "unable to fathom the ALJ's rationale in relation to evidence in the record." *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (per curium). In other words, an ALJ's finding that an impairment does not meet or medically equal a listing—even if insufficiently explained—will nevertheless be upheld if it is supported by other parts of his decision and the underlying record. *See id.*; *see also Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010) (summary order) ("Here, although the ALJ might have been more specific in detailing the reasons for concluding that [the] plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with [the] plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination."); *Knoll v. Berryhill*, 2020 WL 1149994, at *3 (D. Conn. Mar. 10, 2020) ("[W]here there is little or no evidence in the record to support that the plaintiff meets the criteria of the listing, the ALJ's analysis is sufficient if the ALJ 'spoke to a lack of evidence in the record that those criteria were met' in addition to listing the criteria."). But that is not the case here.

To meet listing 11.02, "Epilepsy," a claimant must present a "detailed description of a typical seizure pattern, including all associated phenomena"; experience seizures "more frequently than once a month in spite of at least [three] months of prescribed treatment"; and have "either daytime episodes involving 'loss of consciousness and convulsive seizures' or 'nocturnal episodes manifesting residuals which interfere

6

significantly with activity during the day.'" *See Gonzalez v. Astrue*, 2008 WL 4453166, at *6 (E.D.N.Y. Sept. 30, 2008); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A2, § 11.02. Here, there is record evidence suggesting that Bradley meets each of these criteria.

First, Bradley's seizure disorder is well documented in the record. *E.g.*, Docket Item 13 at 284 (records of John Breznik, M.D., diagnosing Bradley with "[g]eneralized [s]eizure"); *id.* at 344 (records of William Blymire, M.D., noting Bradley's history of "[s]eizure disorder"); *id.* at 395 (records of John Schwab, D.O., reporting that Bradly "admits to seizures since childhood"). Moreover, his seizures were indeed significant: treatment notes documented that Bradley would collapse, bite his tongue, and become incontinent when he had a seizure. *E.g.*, *id.* at 331 (Lixin Zang, M.D., finding that Bradley "had convulsion . . . with wetting bed"); *id.* at 400 (Dr. Zang's finding that "[s]ome of his seizures are truly epileptic with tongue biting and incontinence"); *id.* at 395 (Dr. Schwab's reporting that "when [Bradley] has a seizure his eyes roll up and he makes a noise. He may fall down and he may twitch."); *id.* at 279 (treatment notes from Bradford Regional Medical Center noting that Bradley was hospitalized after having an apparent "tonic/clonic" seizure and collapsing). And his seizures occurred frequently even when he was medicated to prevent them. For example, Bradley's treating neurologist, Dr. Zhang, wrote a letter dated February 16, 2018, in which she noted that despite Bradley's taking "Lyrica, oxcarbazepine[,] and Vimpat[, h]is seizures [were] still not very well controlled. His generalized tonic-clonic seizure frequency qualifie[d] for at least once every [] month[] for [three] consecutive months."[5] *Id.* at 400; *see also id.* at

---

[5] Because Dr. Zhang was Bradley's treating neurologist, her opinion was entitled to special deference. Indeed, an ALJ may not give a treating source's opinion anything less than controlling weight unless he first "explicitly consider[s], *inter alia*: (1) the

7

441-43 (treatment notes from DENT Neurologic Institute finding Bradley had "11 grand mal seizures" since his last appointment six weeks prior).

Despite all this, the Commissioner argues that Bradley cannot meet listing 11.02 because there is no formal "epilepsy diagnosis." Docket Item 17-1 at 11-12. The Commissioner emphasizes a line from Dr. Zhang's February 2018 letter in which she said that Bradley's seizures "sometimes may not be truly epileptic." *See id.* (citing Docket Item 13 at 400). But that simplistic argument misses the mark in several ways.

As an initial matter, it is not at all clear to this Court that an explicit medical diagnosis of epilepsy is required to meet listing 11.02. Stated another way, even though listing 11.02 is labelled "[e]pilepsy" for Social Security purposes, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A2, § 11.02, a formal medical diagnosis of epilepsy may not be necessary to meet that listing. Listing 11.02 defines epilepsy for Social Security purposes as "convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least [three] months of prescribed treatment"; plus daytime or nocturnal episodes meeting certain specific criteria. *Id.* So

---

frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). "An ALJ's failure to 'explicitly' apply [these] factors [before] assigning [less-than-controlling] weight" to a treating source opinion "is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)). The ALJ here failed to "explicitly" consider several of the *Burgess* factors before assigning only "some weight" to Dr. Zhang's opinions. *See* Docket Item 13 at 27. Although Bradley does not raise the issue, that is another error that alone requires remand. *See Estrella*, 925 F.3d at 96. On remand, the ALJ must weigh Dr. Zhang's opinions consistent with that "treating physician rule." *See Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018) (summary order).

8

what matters is that someone experiences seizures and what those seizures entail, not what label a physician uses to describe the condition medically.[6] And here, Bradley has a history of "grand mal" seizures with convulsions and incontinence that persisted despite medication. *See supra.*

Moreover, in the same letter that the Commissioner excerpts, Dr. Zhang also said that "[s]ome of [Bradley's] seizures *are truly epileptic*," Docket Item 13 at 400 (emphasis added), and the record elsewhere mentions an epilepsy diagnosis as well, *id.* at 490 (LCSW Greco's finding that Bradley has a "DSM-IV[7] . . . Evaluation" of "epilepsy 345.10"); *id.* at 496 (LCSW Greco's referring to "Bradley['s] [] medical diagnosis of [e]pilepsy"). So even if one cherry-picked reference suggests that some of Bradley's seizures "may not be truly epileptic [seizures,]" *id.* at 400, there is indeed evidence of "truly" epileptic seizures—and a diagnosis of epilepsy—as well.

Finally, and most basically, even if a formal diagnosis of epilepsy were required to *meet* listing 11.02, and even if Bradley never was explicitly diagnosed with epilepsy, that still would not prevent Bradley from showing that his seizure disorder *equals* listing 11.02. *See* 20 C.F.R. § 404.1520(a)(4)(iii) ("If you have an impairment(s) that *meets or*

---

[6] In fact, the Epilepsy Foundation's website in the section called "What is Epilepsy?" says that "[e]pilepsy means the same thing as 'seizure disorder' and "[t]he word 'epilepsy' does not indicate anything about the cause of a person's seizures or their severity." *What is Epilepsy?*, Epilepsy Foundation, https://www.epilepsy.com/learn/about-epilepsy-basics/what-epilepsy (last visited July 15, 2021).

[7] DSM stands for the "Diagnostic and Statistical Manual of Mental Disorders" and is "[a] system of classification, published by the American Psychiatric Association, which divides recognized mental disorders into clearly defined categories based on sets of objective criteria. . . . [The] DSM is widely recognized as a diagnostic standard and widely used for reporting, coding, and statistical purposes." 243990 Diagnostic and Statistical Manual of Mental Disorders (DSM), Stedman's Medical Dictionary (2014).

*equals* one of our listings . . . we will find that you are disabled.") (emphasis added). And given the record evidence, Bradley's seizures—truly epileptic or not in medical terms—may very well be "equal in severity and duration to the criteria" of listing 11.02. *See id.* § 416.926(a).

"It is particularly important for an ALJ to specifically address conflicting probative evidence with respect to the [listing] analysis, because a claimant whose condition meets or equals that of a [l]isting is deemed disabled *per se* and eligible to receive benefits." *Szarowicz v. Astrue*, 2012 WL 3095798, at *5 (W.D.N.Y. July 30, 2012). The ALJ did not do that here. Because a finding that Bradley met or medically equaled listing 11.02 would have resulted in finding him disabled, the ALJ's error was not harmless and remand is required. *See id.* ("Where there is significant probative evidence that a claimant meets the criteria for a [l]isting . . . , the case will be remanded if the court determines that the plaintiff was owed a more substantive discussion of *why* he did not meet a particular [l]isting.") (emphasis in original) (internal marks omitted). On remand, the ALJ must either compare the "symptoms, signs, and laboratory findings [of Bradley's seizure disorder], including any functional limitations that result from [the disorder], with the corresponding criteria shown for [listing] 11.02," *see Hamedallah*, 876 F. Supp. 2d 133, 142, or "adopt a medical source statement that discusses the medical evidence and arrives at express conclusions concerning the [l]istings," *see Easley*, 2014 WL 5465411, at *3.

## CONCLUSION

The Commissioner's motion for judgment on the pleadings, Docket Item 17, is DENIED, and Bradley's motion for judgment on the pleadings, Docket Item 16, is

GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: July 16, 2021
Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE